UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MIKE PACHECO, | No. SA CV 07-00354-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Mike Pacheco ("Plaintiff") filed a Complaint on March 27, 2007 seeking reversal of the Decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits, originally filed on November 19, 2001. Following administrative denials, Plaintiff received a hearing which resulted in an unfavorable decision issued on October 14, 2003. (Administrative Record ["AR"] 469-480.) The Appeals Council remanded the case for further development and a new hearing. (AR 499-501.) A second hearing was held (AR 628-684), at which Plaintiff appeared, represented by counsel, and testified. Testimony was, in addition, taken from a vocational expert ("VE"). Thereafter, an unfavorable decision was

issued. (AR 27-35.) The Appeals Council denied review, but did consider additional vocational evidence provided after the hearing. (AR 8-11.) Thereafter, Plaintiff filed his Complaint in this Court on March 27, 2007.

Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. This action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed a Certified Administrative Record. This Memorandum Opinion will constitute the Courts findings of facts and conclusions of law.

After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**ISSUES RAISED**

1. Whether the Administrative Law Judge ("ALJ") failed to properly consider an upper extremity limitation;
2. Whether the ALJ's finding that Plaintiff is capable of light exertional level work is supported by substantial evidence;
3. Whether the ALJ properly considered the opinion of Dr. Javanshir;
4. Whether the ALJ properly addressed Plaintiff's credibility;
5. Whether the vocational expert's testimony supports a finding that Plaintiff is capable of his past relevant work;
6. Whether the ALJ properly addressed the credibility of Plaintiff's wife.

2

## II

## **THE ALJ DID NOT PROPERLY EVALUATE PLAINTIFF'S CLAIM**
## **OF A DISABLING UPPER EXTREMITY LIMITATION**

In Plaintiff's first issue, he argues that the ALJ failed to properly consider his upper extremity limitation. The ALJ did not find that Plaintiff's severe impairments included any upper extremity limitation. (AR 31-32.) Plaintiff asserts that the ALJ's conclusion was not based upon any medical evidence in the record, and that the medical opinions set forth in the record do establish such a limitation.

### **A.   Dr. Galloni**

Following a work-related injury on February 28, 1995 which impacted his right elbow, Plaintiff received an initial orthopedic evaluation from Dr. Galloni. (AR 344-350.) Subsequently, Dr. Galloni reevaluated Plaintiff on July 16, 1998 (AR 341-343); August 3, 1998 (AR 338-340); August 19, 1998 (AR 332-334); September 30, 1998 (AR 328-331); November 9, 1998 (AR 323-327); and January 20, 1999 (AR 314-322).

Dr. Galloni assessed the following restrictions in his January 20, 1999 report:

> "The patient is precluded from repetitive grasping, gripping, torquing, pushing, and pulling with the right upper extremity. He is further precluded from heavy lifting with the right upper extremity. I believe that this patient has lost fifty percent capacity of performing these tasks."

(AR 320.)

3

In the first decision by the ALJ, Dr. Galloni's June 19, 1998 and January 20, 1999 evaluations were briefly discussed, but the functional limitations as reported by Dr. Galloni in January 1999 were not specifically rejected. Although in its remand order the Appeals Council ordered the ALJ to "evaluate the medical opinions of the [Plaintiff's] treating, examining and reviewing physicians and state what weight it given to such opinions" (AR 500), this did not occur in the second decision with regard to Dr. Galloni's opinions. The Commissioner effectively acknowledges this in the Joint Stipulation ("JS"), noting simply that Dr. Galloni's opinion was addressed in the earlier decision and incorporated by reference in the second decision. (JS at 8, citing AR 32, 475.)

Dr. Galloni's functional assessment clearly constitutes relevant evidence, and the failure to discuss that evidence, or to determine whether it should be accorded any weight, constitutes reversible error. This is particularly true in view of the fact that the ALJ determined that Plaintiff has a residual functional capacity ("RFC") to perform light work with an ability to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand/walk for six hours in an eight-hour workday. (AR 32.) The ALJ assessed no functional limitations consistent with Dr. Galloni's opinion of January 20, 1999. While the Commissioner argues that another treating orthopedist, Dr. Einbund, on January 9, 1997 only assessed a functional limitation which would preclude Plaintiff from lifting more than 35 to 40 pounds with his right upper extremity (AR 181), it was still incumbent upon the ALJ to reconcile any conflict between these medical opinions. Relevant evidence cannot simply be ignored.

4

1  The Commissioner also highlights an August 7, 1998 neurological
2 examination by Dr. Mahdad (AR 292-295), who assessed that the
3 Plaintiff has normal range of motion in his right elbow and wrist, and
4 only slightly reduced grip strength. (AR 294.)  But again, the
5 apparent inconsistency between this conclusion and that of Dr. Galloni
6 must be addressed.

7  Finally, the Commissioner notes that the RFC adopted by the ALJ
8 was consistent with the functional assessment rendered in a
9 consultative internal medical examination by Dr. Enriquez. (See JS at
10 8, AR at 33, 418-423.)  Indeed, it is correct that Dr. Enriquez failed
11 to assess any functional limitations with regard to repetitive
12 gripping, etc., consistent with those rendered by Dr. Galloni.  The
13 Court has no basis to determine whether the ALJ's failure to adopt Dr.
14 Galloni's restrictions is based on substantial evidence.  Even though
15 Dr. Enriquez indicated he reviewed "all medical records submitted" (AR
16 419), he did not specifically discuss Dr. Galloni's conclusions.

17  The Court also notes that in the first decision, the ALJ assessed
18 Plaintiff's RFC as precluding repetitive above the shoulder pushing,
19 pulling, reaching and climbing. (AR 479.)  Indeed, these restrictions
20 were incorporated into a hypothetical question which the ALJ posed to
21 the VE at the first hearing. (AR 588.)  Even these limitations,
22 however, did not fully incorporate Dr. Galloni's restrictions with
23 regard to preclusion from repetitive grasping, gripping, or torquing.
24 (AR 320.)  Nevertheless, no such restrictions are set forth by the ALJ
25 in the second decision, in which Plaintiff's RFC only limits him to
26 carrying 20 pounds occasionally and 10 pounds frequently, sitting for
27 six hours and standing or walking for six hours in an eight-hour work
28 day. (AR 32.)  The Court has no basis to determine why even the

previous restrictions were now no longer included in Plaintiff's RFC.

It is recognized that an ALJ is not required to discuss every piece of evidence, or every portion of every piece of evidence in the record.  Rather, the Court looks to the decision to determine whether it is based on substantial evidence, and to insure that the ALJ did not selectively analyze the evidence. (See Howard ex. rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).)  Especially in this case, where the opinion of a treating orthopedist contains relevant and significant functional restrictions, the ALJ is under an obligation to discuss and evaluate it.  While that opinion may turn out to be effectively contradicted by examining sources, and reasons for that may exist, the Court cannot perform such an independent analysis.  The ALJ's decision must engage in this process in order to resolve any such possible disputes in the evidence.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

The Court concludes that the failure to consider the opinion of a treating source concerning right upper extremity limitations is reversible error, and the matter must be remanded for further hearing in accordance with this Opinion.

**III**

**THE ALJ DID NOT ERR IN DETERMINING THAT PLAINTIFF**

**IS CAPABLE OF LIGHT EXERTIONAL WORK**

Plaintiff's second issue asserts that the ALJ erred in determining Plaintiff's RFC.  The ALJ determined that Plaintiff is capable of light work, the exertional requirements of which are set forth in 20 C.F.R. §§404.1567(b) and 416.967(b). (AR 32.) Plaintiff's contention is that this finding is erroneous because it fails to deal

6

with issues of Plaintiff's lower back and left knee pain, and a lupus condition. (JS at 12.)

The ALJ's determination of Plaintiff's severe impairments included polyarthritis, degenerative disc disease of the cervical and lumbar spine, and right knee meniscus tear. (AR 31.) But a diagnosis of an impairment, even when that impairment is determined to be severe, does not suffice to establish disability. It is fundamentally the ALJ's role to evaluate medical evidence in the record, which is often conflicting. (See 20 C.F.R. §§404.1546(c) and 416.946(b).) In making this determination, the medical evidence submitted is to be considered and evaluated. At this level in the process, the burden is upon Plaintiff to establish that these impairments create or contribute to functional restrictions which impact his ability to work, or his RFC assessment. The ALJ did exactly that. With regard to Plaintiff's lower extremities, Plaintiff's own treating physician reported that although he found tenderness to deep palpation of both legs and knee areas, the range of motion maneuvers for the lower extremities were within normal limits. (AR 430.) Dr. Javanshir also examined Plaintiff's lumbar spine area, which revealed tenderness to palpation; however, no clinical evidence of any restrictions was noted.

A consultative examination performed on January 15, 2002 by Dr. Enriquez, at the request of the Department of Social Services, revealed essentially identical results. (AR 418-423.) Dr. Enriquez found that Plaintiff's range of motion in the knees was grossly within normal limits bilaterally, and in fact, found no tenderness on the knees. As to Plaintiff's lumbar spine, Dr. Enriquez found a range of motion which was grossly within normal limits, and no tenderness to

1  palpation or muscle spasm was noted. (AR 421.)  Plaintiff had normal
2  gait and motor strength. (AR 421.)  Further, the medical records do
3  not bear out Plaintiff's interpretation that his knee x-rays show
4  "significant tears."  In fact, the evidence shows only the possibility
5  of tears in the anterior cruciate ligament and in the posterior ham of
6  the lateral meniscus. (AR 424-425, 427, 432.)

   Plaintiff's contention that the ALJ could not rely upon the opinion of Dr. Enriquez because he did not have certain x-rays is fundamentally flawed.  The examinations conducted by Dr. Javanshir, Plaintiff's long-time treating physician, and Dr. Enriquez, a CE, reveal identical results, and evidence a lack of abnormality in functional testing.  Plaintiff seems to misconstrue the role of the ALJ.  He notes, for example, that Plaintiff's lumbar spine MRI showed severe diffuse disc dessication at a certain point of the spine. (JS at 16, citing AR 426.)  Plaintiff asserts that, "How this limits [Plaintiff] is for a medical professional to decide, not the ALJ." (Id.)  This is incorrect for two reasons.  First, it is Plaintiff's burden to show that any impairments from which he suffers cause functional limitations relevant to the disability analysis.  Second, it is the ALJ's role to examine that medical evidence and determine the existence of disability.  See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

   For the foregoing reasons, the Court does not find error with regard to the ALJ's determination of Plaintiff's RFC.[1]

---

[1] The Court notes, however, that on remand, the medical opinions of Dr. Galloni are to be reconsidered, as per the Court's discussion of the first issue.  To the extent those opinions are credited on remand, this may impact the ultimate determination of (continued...)

**IV**

**THE ALJ PROPERLY CONSIDERED THE OPINION OF DR. JAVANSHIR**

The third issue concerns the ALJ's interpretation of Dr. Javanshir's opinion. Essentially, Plaintiff argues that the ALJ inappropriately rejected Dr. Javanshir's conclusion that he is disabled from any type of gainful employment. (JS at 18, et seq., AR 433.)

This issue does not merit extensive discussion, because the Court has already addressed it in the context of the previous issue. In summary, it is not Dr. Javanshir, or any physician, who dictates a conclusion of disability. Medical professionals provide evidence, typically based on clinical examination. It is the role of the ALJ to interpret that medical evidence and to reach a conclusion as to disability. Moreover, Dr. Javanshir's status as Plaintiff's treating physician does not elevate his opinion to incontrovertability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Javanshir's clinical findings, which this Court has already addressed in the previous issue, were in fact essentially benign, exactly as the ALJ interpreted them. (AR at 34.) The ALJ's conclusion that Dr. Javanshir's opinion as to disability was not supported by his clinical examination will not be disturbed by this Court. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Javanshir's conclusion as to disability. See Thomas v. Barnhart, 278 F.3d at 956, citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

---

[1](...continued)
Plaintiff's RFC.

V

**THE ALJ DID NOT ERR IN DETERMINING PLAINTIFF'S CREDIBILITY**

Plaintiff next asserts that the ALJ failed to properly determine his credibility with regard to his testimony as to subjective pain, and in particular, failed to credit Plaintiff's testimony at the hearing. (JS at 22, et seq.) The Court disagrees.

Evaluation of credibility is specific in terms of the evidence which is to be considered by the ALJ. (See §§404.1529, 416.929.) Relevant case law on this issue is consistent with the regulation. Once a plaintiff has established an underlying medical impairment which could reasonably be expected to produce subjective symptoms of pain, an ALJ must provide specific, clear and convincing reasons to reject the allegations of those subjectively disabling symptoms. See Thomas v. Barnhart, 278 F.3d at 960.

The ALJ's decision with regard to Plaintiff's credibility, contrary to Plaintiff's contention, did incorporate the prior decision of the other ALJ. (See AR at 32.)  In that decision, the ALJ identified the specific evidence upon which he relied to depreciate Plaintiff's credibility.  This included activities of daily living ("ADLs"), such as doing household chores, traveling to Peru where he lived for two years, taking walks, reading books, and visiting with his children. (AR 476-477, 637, 642.)  Plaintiff drove 40 minutes every day to take his wife to the doctor. (AR 119-122, 477.) Plaintiff's treatment record was also considered. (AR 33.) As the ALJ observed, a conservative level of treatment, and medications, had served to significantly alleviate Plaintiff's pain. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995). Further, contrary to Plaintiff's contentions, he did receive medical treatment in Peru

10

during the years he lived there. (AR 569, 581-583, 659.)

One factor properly considered by the ALJ was the lack of extensive correlation between Plaintiff's complaints and his functional performance during clinical examinations.[2] While the ALJ accepted that Plaintiff does suffer from some pain, that factor was properly incorporated into the ultimate RFC assessment in the determination of whether Plaintiff is disabled.

The Court finds that the ALJ's credibility finding was supported by substantial evidence contained in the record.

**VI**

**THE ALJ DID NOT ERR IN DETERMINING PLAINTIFF'S PAST RELEVANT WORK**

The ALJ determined that Plaintiff is capable of performing his past relevant work as a supervisor of mold making of plastic sheets. (AR 34.) Significant testimony was taken at the hearing from a VE. Plaintiff essentially asserts that, based upon his testimony at the hearing with regard to the requirements of his past relevant work, his occupation was improperly classified. For the following reasons, Plaintiff's argument has no merit.

The determination of past relevant work is dependent on work either as the claimant actually performed it or as the work is ordinarily performed in the national economy. (See Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986); Social Security Ruling ["SSR"] 82-61.) In determining how a claimant's past work is ordinarily performed in the national economy, the ALJ may look to the requirements set forth in the Dictionary of Occupational Titles

---

[2] This topic has been addressed by the Court in previous sections.

("DOT"), and may also utilize the testimony of a VE.  See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).

When Plaintiff applied for disability, he was asked in his application to describe his past relevant work. (AR 88, 100-105.) Plaintiff's description of his work was as a plant foreman/shift supervisor in the plastics business.  (AR 100.)  This work was performed from 1982 through 1993 and, as Plaintiff described it in his Work History Report, required a slight level of postural activities, lifting less than ten pounds as the heaviest weight, and requiring very little handling or reaching. (Id.)

When Plaintiff testified at his hearing with regard to his work as a shift supervisor, he indicated the heaviest weight he lifted was about 20 pounds and he was required to both sit and stand. (AR 645-646.)  Plaintiff's attorney introduced a declaration indicating that as a supervisor, Plaintiff was required to push and pull as much as 50 pounds. (AR 134-135, 648-649.)

After having reviewed the records and heard the testimony, the VE identified Plaintiff's work as being a shift supervisor under the job of molding supervisor, DOT No. 579.137-022, for the reason that this work was more akin to that which Plaintiff described in his vocational history in his applications. (AR 581, 598, 661, 669-670, 672.)  The DOT described this work as light and skilled (SVP 6). (AR 581.) Plaintiff contended at the hearing, and now contends, that the job he performed was more like that of a supervisor in the extruding department, under DOT No. 577.130-010 (AR 599-608, 663-666.)  The VE disagreed with this conclusion, explaining that the job of supervisor, extruding department was a higher level of skill and was performed at a heavier exertional level than what Plaintiff had previously

described. (AR 662-664.)  The VE testified that her identification of Plaintiff's past relevant work was based on the descriptions Plaintiff gave on his two vocational histories. (AR 621, 663-681.)

Although Plaintiff's testimony essentially described his work in a fashion inconsistent with that set forth in his vocational histories, that conflict was one to be resolved by the ALJ.  See Andrews v. Shalala, 53 F.3d at 1039.  It was within the province of the ALJ to rely upon Plaintiff's statements in his vocational histories and upon the VE's testimony in support of his decision that Plaintiff could perform his past relevant work as a shift supervisor.

The Court finds no error in Plaintiff's assertions regarding the determination of his past relevant work.

**VII**

**ON REMAND, THE ALJ WILL ADDRESS THE TESTIMONY OF PLAINTIFF'S WIFE**

Plaintiff's wife testified at the first hearing, and the credibility of her assertions with regard to Plaintiff's symptoms was addressed by the ALJ in the first decision. (See AR at 476.)  This did not occur after the second hearing, at which Plaintiff's wife did not testify.  Thus, the ALJ failed to address the impact, if any, of the testimony of Plaintiff's wife on his decision.  The Court need not decide whether this failure, in and of itself, would merit remand, since the Court has already determined that the matter will be remanded based on error which occurred concerning the first issue. Therefore, on remand, the ALJ will specifically address the testimony of Plaintiff's wife with regard to the disability analysis.

//
//

For the foregoing reasons, the decision of the Commissioner is reversed and this matter is remanded for a new hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**


DATED: January 8, 2008                    /s/
                                  VICTOR B. KENTON
                                  UNITED STATES MAGISTRATE JUDGE